RE: OKLAHOMA MENTAL HEALTH RESEARCH FOUNDATION
ATTORNEY GENERAL HENRY HAS RECEIVED YOUR REQUEST FOR LEGAL ADVICE REGARDING THE PROPRIETY OF THE CREATION AND ADMINISTRATION OF THE "OKLAHOMA MENTAL HEALTH RESEARCH INSTITUTE FOUNDATION," A PRIVATE NON-PROFIT CORPORATION, BY OFFICERS AND EMPLOYEES OF THE STATE DEPARTMENT OF MENTAL HEALTH. YOU INDICATE THAT YOUR CONCERNS ARE PRIMARILY DIRECTED TOWARD THE QUESTION OF WHETHER SUCH CREATION AND ADMINISTRATION WOULD CONSTITUTE AN UNLAWFUL CONFLICT OF INTEREST, IN THAT THE PRIMARY PURPOSE OF THE FOUNDATION IS STATED TO SEEK FUNDS FROM PUBLIC AND PRIVATE SOURCES RELATING TO MENTAL HEALTH RESEARCH. THIS PURPOSE APPEARS TO IMPACT UPON THE SPECIAL LANGUAGE FOUND IN 43A O.S. 2-105 AND 43A O.S. 2-106 (1987), AUTHORIZING THE DEPARTMENT, ITSELF, TO ENGAGE IN SUCH ACTIVITIES.
PLEASE BE ADVISED THAT THIS OFFICE CANNOT RENDER A FORMAL OPINION IN RESPONSE TO YOUR LETTER, AS SUCH A DOCUMENT MAY ONLY BE MADE WHEN PURE QUESTIONS OF LAW, WITHOUT A REVIEW OF THE SPECIFIC FACTS OF A PARTICULAR SITUATION IN MIND, CAN RESOLVE AN ISSUE. YOUR QUESTIONS ALL STEM FROM A CONCERN OF WHETHER STATE LAW WOULD BE VIOLATED BY THE CREATION AND OPERATION OF THE PARTICULAR FOUNDATION INDICATED, AND WOULD THEREFORE INHERENTLY INVOLVE QUESTIONS OF PARTICULARIZED FACTS THAT WOULD HAVE TO BE EVALUATED IN ORDER TO GIVE A CONSIDERED LEGAL OPINION.
HOWEVER, ATTORNEY GENERAL HENRY HAS AUTHORIZED ME TO PERSONALLY RESPOND TO YOU IN THE FORM OF THIS INFORMATIONAL LETTER. THE CONCERNS PRESENTED IN THIS LETTER ARE BASED SOLELY UPON A REVIEW OF THE DOCUMENTS THAT YOU HAVE TRANSMITTED TO THIS OFFICE FOR REVIEW, AND ARE PRESENTED SPECIFICALLY ACKNOWLEDGING THAT I HAVE NOT MADE ANY EFFORT TO INDEPENDENTLY VERIFY THE ACCURACY OF THESE DOCUMENTS. IN BRIEF PREFACE, I CANNOT SAY THAT THE MERE INCORPORATION OF SUCH AN ENTITY WOULD CONSTITUTE A PER SE VIOLATION OF STATE LAW REGARDING CONFLICTS OF INTEREST ON THE PART OF THE INCORPORATORS AND OFFICERS/MEMBERS WHO ARE ALSO DEPARTMENTAL OFFICERS AND EMPLOYEES. HOWEVER, IT IS ALSO MY OPINION THAT THE OPERATION AND ADMINISTRATION OF THE CORPORATION AS ENVISIONED IN THOSE DOCUMENTS WOULD QUITE LIKELY ULTIMATELY RESULT IN AN UNLAWFUL PROHIBITED CONFLICT OF INTEREST FOR THE STATE OFFICERS AND EMPLOYEES INVOLVED.
TITLE 74 O.S. 4241 (1987) STATES, IN THIS REGARD:
"NO STATE EMPLOYEE SHALL:
 1. DIRECTLY OR INDIRECTLY SOLICIT OR ACCEPT ANY COMPENSATION, GIFT, LOAN, ENTERTAINMENT, FAVOR OR SERVICE GIVEN FOR THE PURPOSE OF INFLUENCING SUCH EMPLOYEE IN THE DISCHARGE OF HIS OFFICIAL DUTIES. PROVIDED, HOWEVER, THAT THIS SECTION SHALL NOT APPLY TO BONA FIDE CAMPAIGN CONTRIBUTIONS;
 2. USE HIS OFFICIAL POSITION TO SOLICIT OR SECURE SPECIAL PRIVILEGES OR EXEMPTIONS FOR HIMSELF OR OTHERS, EXCEPT AS MAY BE PROVIDED BY LAW;
 3. DISCLOSE OR OFFER TO DISCLOSE CONFIDENTIAL INFORMATION ACQUIRED BY REASON OF HIS OFFICIAL POSITION TO ANY PERSON, GROUP OR OTHERS NOT ENTITLED TO RECEIVE SUCH CONFIDENTIAL INFORMATION, NOR SHALL HE USE SUCH INFORMATION FOR HIS PERSONAL GAIN OR BENEFIT;
 4. SELL OR OFFER TO SELL OR CAUSE TO BE SOLD, EITHER AS AN INDIVIDUAL OR THROUGH ANY BUSINESS ENTERPRISE IN WHICH HE HOLDS A SUBSTANTIAL FINANCIAL INTEREST, GOODS OR SERVICES TO ANY STATE AGENCY OR TO ANY BUSINESS ENTITY LICENSED BY OR REGULATED BY THE STATE AGENCY, EXCEPT AS PROVIDED IN PARAGRAPH 3 OF SECTION 26 OF THIS ACT;
 5. RECEIVE OR SOLICIT ANY COMPENSATION THAT WOULD IMPAIR HIS INDEPENDENCE OF JUDGMENT, FOR HIS SERVICES AS AN OFFICER OR EMPLOYEE OF ANY STATE AGENCY, FROM ANY SOURCE OTHER THAN THE STATE, UNLESS OTHERWISE PROVIDED BY LAW; OR
 6. ACCEPT OR SOLICIT OTHER EMPLOYMENT WHICH WOULD IMPAIR HIS INDEPENDENCE OF JUDGMENT IN THE PERFORMANCE OF HIS PUBLIC DUTIES."
WHAT ARE THE DUTIES OF THE DEPARTMENT OF MENTAL HEALTH AND ITS GOVERNING BOARD AND ADMINISTRATIVE EMPLOYEES? THE TERMS OF 43A O.S. 2-101 CREATE A STATE DEPARTMENT OF MENTAL HEALTH. THE DEPARTMENT'S GOVERNING BOARD IS NAMED THE MENTAL HEALTH BOARD, AND ITS CHIEF ADMINISTRATIVE OFFICER IS THE COMMISSIONER OF MENTAL HEALTH. ID. THE SAME STATUTE DECREES THAT THE DEPARTMENT SHALL EXERCISE ALL FUNCTIONS OF THE STATE IN RELATION TO THE ADMINISTRATION AND OPERATION OF ALL STATE INSTITUTIONS FOR THE CARE AND TREATMENT OF THE MENTALLY ILL AND DRUG-OR ALCOHOL-DEPENDENT PERSONS. NUMEROUS OTHER STATUTORY GRANTS OF AUTHORITY RELATIVE TO THE DEPARTMENT AND ITS GOVERNING BOARD EXIST IN THE STATUTE BOOKS. THE TWO STATUTES HIGHLIGHTED BY YOUR INQUIRIES OF THIS OFFICE, 43A O.S. 2-105 AND 43 O.S. 2-106 (1987) STATES:
 "(A) ON AND AFTER JULY 1, 1967, THE STATE BOARD OF MENTAL HEALTH SHALL BE THE MENTAL HEALTH AUTHORITY OF THE STATE OF OKLAHOMA, AND IS AUTHORIZED TO RECEIVE GRANTS OF FEDERAL FUNDS FOR THE PURPOSE OF COMBATING OR PREVENTING MENTAL ILLNESS, INCLUDING BUT NOT LIMITED TO FUNDS FOR THE TREATMENT, CARE, REHABILITATION, OR TRAINING OF THE MENTALLY ILL, OR FOR THE ESTABLISHMENT OR EXPANSION OF ANY PROGRAM OF FACILITIES OR RESEARCH PROJECTS RELATING TO THE MENTALLY ILL, OR FOR CONSTRUCTION OF RESEARCH CENTERS AND OTHER FACILITIES FOR THE MENTALLY ILL, AND IS AUTHORIZED TO COOPERATE IN ANY REASONABLE MANNER WITH THE FEDERAL AGENCY OR AGENCIES GRANTING SUCH FEDERAL FUNDS FOR SUCH PURPOSES, INCLUDING COMPLIANCE WITH ANY CONDITIONS PRESCRIBED BY THE FEDERAL AUTHORITIES FOR THE GRANTING OF SUCH FUNDS. THE STATE BOARD OF MENTAL HEALTH SHALL SERVE AS THE SOLE DESIGNATED STATE AGENCY FOR RECEIVING, DISBURSING, OR ADMINISTERING FEDERAL FUNDS FOR ANY OF THE AFORESAID PURPOSES, PROVIDED FEDERAL LAW REQUIRES SUCH AN AGENCY AND THE STATE BOARD OF MENTAL HEALTH IS ELIGIBLE TO BE SUCH AN AGENCY UNDER FEDERAL LAW. CONSTRUCTION PROJECTS, AND APPLICATIONS THEREFOR FOR ANY OF THE AFORESAID PURPOSES, SHALL NOT REQUIRE THE APPROVAL OF ANY OTHER STATE AGENCY. PROVIDED, THAT THIS SECTION SHALL NOT PREVENT ANY OTHER AGENCY FROM RECEIVING, DISBURSING, OR ADMINISTERING FEDERAL GRANTS FOR ANY OF THE AFORESAID PURPOSES IN ACCORDANCE WITH FEDERAL LAW.
 (B) IN ORDER TO PROVIDE FOR AN ORDERLY TRANSITION TO THE STATE BOARD OF MENTAL HEALTH OF SUCH OF THE AFORESAID FUNCTIONS AS ARE NOW VESTED IN OTHER PUBLIC AGENCIES, THIS SECTION SHALL NOT AFFECT THE CONSTRUCTION BY OTHER PUBLIC AGENCIES OF PROGRAMS FOR MENTAL HEALTH, OR THE FURNISHING BY OTHER PUBLIC AGENCIES OF MENTAL HEALTH SERVICES IN CHILD GUIDANCE CENTERS, OR THE RECEIPT BY OTHER PUBLIC AGENCIES OF FEDERAL FUNDS FOR ANY OF SUCH PURPOSES."
43A O.S. 2-105
"THE MENTAL HEALTH BOARD SHALL ACCEPT, HOLD IN TRUST AND AUTHORIZE THE USE OF ANY GRANT OR DEVISE OF LAND, OR ANY DONATION OR BEQUEST OF MONEY, OR OTHER PERSONAL PROPERTY MADE TO THE DEPARTMENT, OR TO ANY INSTITUTION THEREIN, SO LONG AS THE TERMS OF THE GRANT, DONATION, BEQUEST, GIFT, OR WILL ARE CARRIED OUT. THE MENTAL HEALTH BOARD MAY INVEST AND REINVEST ANY FUNDS AND MAY LEASE OR SELL ANY REAL OR PERSONAL PROPERTY AND INVEST THE PROCEEDS, FOR THE BENEFIT OF THE DEPARTMENT OR ANY INSTITUTION THEREIN UNLESS PREVENTED BY THE TERMS OF THE GRANT, DONATION, BEQUEST, GIFT OR WILL.
THE MENTAL HEALTH BOARD MUST ANNUALLY ACCOUNT TO THE STATE AUDITOR AND INSPECTOR FOR ALL MONIES OR PROPERTY RECEIVED OR EXPENDED BY VIRTUE OF THIS SECTION WHICH ACCOUNT SHALL STATE THE SOURCE OF THE MONIES OR PROPERTY RECEIVED WITH THE ACTUAL DATE OF ITS RECEIPT, THE PARTICULAR USE OR PLACE FOR WHICH IT WAS EXPENDED, THE BALANCE ON HAND SHOWING THE PLACE OF DEPOSIT OF THE UNEXPENDED FUNDS."
43A O.S. 2-106 (1987).
RELIANCE SOLELY UPON THE PORTION OF SECTION 2-105 THAT DISCUSSES THE DEPARTMENT'S ROLE AS THE "SOLE DESIGNATED STATE AGENCY FOR RECEIVING, DISBURSING OR ADMINISTERING FEDERAL FUNDS . . . N DOES NOT RESOLVE YOUR INQUIRIES. THAT SECTION IS A PECULIAR ONE DESIGNED TO PERMIT THE STATE TO QUALIFY FOR CERTAIN TYPES OF PROGRAMS WHERE AS A CONDITION TO ENGAGING IN THE RELATIONSHIP THE STATE MUST DESIGNATE A SINGLE ENTITY AS THE PARTY TO LOOK TO FOR OVERSIGHT PURPOSES. NOT ALL PROGRAMS INVOLVE SUCH REQUIREMENTS, AND A FULL READING OF THE STATUTE INDICATES THAT THE LEGISLATURE DID NOT INTEND TO WHOLLY PROHIBIT ALL OTHER AGENCIES OF THE STATE FROM BEING ELIGIBLE TO RECEIVE FEDERAL MONIES RELATED TO MENTAL HEALTH CARE.
SIMILARLY, BY MERELY READING THE FACIAL TERMS OF THE DOCUMENTS THAT YOU HAVE TRANSMITTED TO THIS OFFICE FOR REVIEW, I CANNOT SAY, AS A MATTER OF CERTAINTY, THAT THE INVOLVEMENT OF DEPARTMENT OFFICERS AND EMPLOYEES WOULD AUTOMATICALLY CONSTITUTE A CONFLICT OF INTEREST. HOWEVER, IF ONE LOOKS CLOSELY AT THE MANNER IN WHICH THE FOUNDATION IS APPARENTLY INTENDED TO OPERATE, IT IS MY OPINION THAT ACTIVITIES BY DEPARTMENT OFFICERS AND EMPLOYEES IN OPERATING THE FOUNDATION COULD EASILY RESULT IN THOSE PERSONS VIOLATING STATE LAW.
THE CERTIFICATE OF INCORPORATION OF THE OKLAHOMA MENTAL HEALTH RESEARCH INSTITUTE FOUNDATION, FILED MARCH 9, 1988 WITH THE SECRETARY OF STATE RECITES:
 "THE PURPOSE FOR WHICH THE CORPORATION IS FORMED IS TO PROMOTE AND CONDUCT RESEARCH WHICH ENHANCES THE EXISTING BODY OF KNOWLEDGE IN THE AREAS OF MENTAL ILLNESS, SUBSTANCE ABUSE AND FAMILY VIOLENCE."
IN A LETTER DATED MARCH 25, 1988 FROM MS. JACQUELINE ENNIS, ADMINISTRATOR OF RESEARCH AND EVALUATION FOR THE OKLAHOMA DEPARTMENT OF MENTAL HEALTH, AND A PERSON WHO IS ALSO APPARENTLY THE ADMINISTRATOR FOR THE FOUNDATION, TO MR. PETER G. PIERCE III, AN ATTORNEY, MS. ENNIS DESCRIBED THE FOUNDATION PURPOSE AS FOLLOWS:
 "THE OKLAHOMA MENTAL HEALTH RESEARCH FOUNDATION IS CONCEIVED FOR THE SOLE PURPOSE OF RECEIVING, HOLDING, AND DISBURSING NON-APPROPRIATED FUNDS DERIVED FROM MENTAL HEALTH RESEARCH GRANT PROPOSAL ACTIVITY OF THE OKLAHOMA MENTAL HEALTH RESEARCH INSTITUTE, WHICH IS ITSELF THE RESEARCH ARM OF THE DEPARTMENT OF MENTAL HEALTH. AS SUCH, IT WOULD ALWAYS BE ACCOUNTABLE TO THE COMMISSIONER OF MENTAL HEALTH. ITS PRIMARY PURPOSE WOULD BE TO ACCEPT, ACCOUNT FOR, AND DISBURSE FUNDS DERIVED FROM PUBLIC OR PRIVATE GRANTING AGENCIES, FOUNDATIONS, OR INDIVIDUALS, SUPPORTING SCIENTIFIC RESEARCH PROJECTS AND PROGRAMS ADMINISTERED BY AND "HOUSED" IN THE OMHRI."
THAT DESCRIPTION IS MUCH MORE FOCUSED IN SCOPE THEN IS THE PURPOSE STATED IN THE CERTIFICATE OF INCORPORATION. INDEED, THE CERTIFICATE OF INCORPORATION AND BY-LAWS OF THE FOUNDATION, VIEWED WITHOUT MS. ENNIS' NON-BINDING STATEMENTS, COULD EASILY BE READ TO GRANT AUTHORITY TO THE FOUNDATION TO SUCH A DEGREE THAT EXACTLY THE OPPOSITE CONCLUSION FROM THAT STATED BY MS. ENNIS COULD BE REACHED BY A PERSON REVIEWING THE LEGAL DOCUMENTS. HOWEVER, EVEN PRESUMING THE CORRECTNESS OF MS. ENNIS' STATEMENTS, SUCH A USE OF PRIVATE MEANS TO EFFECTUATE A STATE PURPOSE COULD WELL CAUSE LEGAL PROBLEMS FOR THE DEPARTMENT, AS IS DEVELOPED FURTHER, BELOW. MR. PIERCE IS AN ATTORNEY WITH THE OKLAHOMA CITY LEGAL FIRM OF CARSON, RAYBURN, PIERCE MUELLER, THE FIRM WHICH ACTS AS LEGAL ADVISORS TO THE DEPARTMENT. THIS FIRM IS ALSO NAMED AS LEGAL COUNSEL FOR THE FOUNDATION.
THE GOVERNANCE OF THIS FOUNDATION IS RECITED IN ITS CERTIFICATE OF INCORPORATION TO BE IN THE HANDS OF A BOARD OF DIRECTORS COMPRISED OF A NUMBER OF PERSONS SEPARATELY IDENTIFIED AS CURRENT SENIOR ADMINISTRATIVE EMPLOYEES OF THE DEPARTMENT. IN THE LETTER FROM MS. ENNIS TO MR. PIERCE REFERRED TO ABOVE, THE MEMBERS OF THE BOARD OF DIRECTORS OF THIS FOUNDATION ARE IDENTIFIED BY NAME, AND AS PERSONS WHO WERE, AS OF THE DATE OF THE LETTER, ACTING AS THE COMMISSIONER OF THE DEPARTMENT OF MENTAL HEALTH, THE CHIEF OF OPERATIONS FOR THE DEPARTMENT, THE ASSISTANT COMMISSIONER, THE CENTRAL REGION PROGRAM MANAGER, THE EASTERN REGION PROGRAM MANAGER, THE-CHIEF OF PUBLIC INFORMATION, THE CHIEF OF PROGRAMS, AND THE WESTERN REGION PROGRAM MANAGER.
THE LETTER STATES THAT NONE OF THESE PERSONS IS TO RECEIVE ANY COMPENSATION FOR THEIR WORK ON THE BOARD. HOWEVER, THE CORPORATION BY-LAWS STATE, IN SECTION 3.13 THEREOF:
 "THE BOARD OF DIRECTORS SHALL HAVE THE POWER IN ITS DISCRETION TO CONTRACT FOR AND TO PAY TO DIRECTORS RENDERING UNUSUAL OR EXCEPTIONAL SERVICES TO THE CORPORATION SPECIAL COMPENSATION APPROPRIATE TO THE VALUE OF SUCH SERVICES. NOTHING HEREIN CONTAINED SHALL BE CONSTRUED AS PRECLUDING A DIRECTOR FROM SERVING IN A CAPACITY OTHER THAN DIRECTOR AND RECEIVING REASONABLE COMPENSATION THEREFOR."
NOT ONLY IS THIS SECTION EXPLICIT AUTHORITY TO PAY THE DIRECTORS FOR THEIR SERVICES AS SUCH, IT ALSO IMPLIES THAT THE DIRECTORS ENVISION PAYING THEMSELVES AS "RESEARCHERS" OR IN SOME SIMILAR SCENARIO. SECTIONS 4.11 AND 8.02 OF THE FOUNDATION BY-LAWS ALSO CONTAIN STATEMENTS SUPPORTING THIS POINT. SECTION 3.12, IN THIS SAME REGARD, SPECIFICALLY RECOGNIZES THAT THE FOUNDATION DIRECTORS AND OFFICERS DO ENVISION BEING PERSONALLY INTERESTED IN CONTRACTS INVOLVING THE FOUNDATION'S ACTIVITIES. IN SHORT, WHILE IT IS STATED IN THE LETTER FROM MS. ENNIS THAT THE DIRECTORS WOULD NOT RECEIVE ANY COMPENSATION FROM THE FOUNDATION, THE MATERIALS THAT YOU TRANSMITTED TO THIS OFFICE, APPEARING TO BE THE ACTUAL BY-LAWS OF THE FOUNDATION, INDICATE THAT HER STATEMENT IS NOT WHOLLY ACCURATE.
IT IS ALSO SPECIFICALLY CONTEMPLATED IN THESE MATERIALS THAT THE DEPARTMENT WILL PROVIDE ADMINISTRATIVE AND STAFF SUPPORT FOR THE FOUNDATION'S ACTIVITIES ON A REGULAR BASIS. THE COMMISSIONER OF MENTAL HEALTH IS NAMED AS THE FOUNDATION SERVICE AGENT. THE MAILING ADDRESS OF THE FOUNDATION IS THAT OF THE COMMISSIONER. THE CHIEF OF OPERATIONS OF THE DEPARTMENT, TOGETHER WITH THE DEPARTMENT ADMINISTRATOR OF RESEARCH AND EVALUATION ARE NAMED AS BEING LIAISON BETWEEN THE DEPARTMENT AND FOUNDATION. THE LETTER STATES:
 "OTHER THAN APPLYING FOR "INDIRECT COSTS" THROUGH FEDERAL RESEARCH GRANT APPLICATIONS ALL SERVICES PROVIDED BY THE DEPARTMENT TO THE RESEARCH INSTITUTE WILL BE OF AN NIN-KINDI' NATURE."
PARAGRAPH 13 OF THE LETTER GOES ON TO STATE THAT ALL HOSPITAL AFFILIATIONS WILL PROVIDE A SOURCE OF SUBJECTS AND `LAB' SPACE'. THESE HOSPITAL AFFILIATIONS, N IN TURN, ARE IDENTIFIED AS INCLUDING INSTITUTIONS UNDER THE DEPARTMENT'S CONTROL. IN PARAGRAPH 12 OF THE LETTER, IT IS STATED THAT THE COMPTROLLER FOR THE DEPARTMENT WILL HOLD DAY-TO-DAY ACCOUNTING RESPONSIBILITIES FOR THE FOUNDATION." INDEED, ALL OF THE LETTERS FROM PERSONS EMPLOYED BY THE DEPARTMENT AND IDENTIFIED AS BEING INVOLVED IN THE PROJECT HAVE BEEN TRANSMITTED BY THE USE OF STATIONERY THAT IS PUBLIC PROPERTY, AND, PRESUMABLY, MAILED AT STATE EXPENSE OR VIA THE STATE INTERAGENCY MAIL DEPARTMENT.
GIVEN THIS TYPE OF ENVISIONED PROGRAM, AND THE MANDATES OF 43A O.S. 2-105 AND 43A O.S. 2-106 (1987), IS A CONFLICT OF INTEREST INVOLVING THE PUBLIC EMPLOYEES ENGAGED IN FOUNDATION ACTIVITIES LIKELY TO OCCUR? IN MY OPINION, SUCH A CONFLICT IS VIRTUALLY A CERTAINTY. IT IS A DUTY OF THE COMMISSIONER OF MENTAL HEALTH TO OVERSEE THE RECEIPT BY THE DEPARTMENT OF GRANTS FROM FEDERAL, OTHER PUBLIC AND PRIVATE SOURCES FOR THE PURPOSE OF COMBATING OR PREVENTING MENTAL ILLNESS. RESEARCH GRANTS ARE SPECIFICALLY IDENTIFIED AS BEING THE TYPES OF PROJECTS THAT MAY BE ACCEPTED BY THE DEPARTMENT.
THESE STATUTES MERELY DISCUSS THE POWER OF THE DEPARTMENT TO "ACCEPT" GRANTS, AND TO ADMINISTER THOSE ACCEPTED, AND DO NOT ADDRESS ANY DUTY TO ACTIVELY SEEK OUT SUCH MONIES. HOWEVER, THIS IS A DAY OF INCREASING INTERDEPENDENCE OF STATE AND FEDERAL FUNDING EFFORTS FOR THESE TYPES OF ACTIVITIES. IT SHOULD BE EXPECTED THAT THE COMMISSIONER, IN THE ORDINARY COURSE OF HIS BUSINESS AS A PUBLIC OFFICER, WOULD BE SEEKING FUNDING FOR THE DEPARTMENT'S OWN EFFORTS FROM THESE SOURCES.
IF ANY OF THE STATE EMPLOYEES INVOLVED SHOULD EVER CONSIDER, FOR WHATEVER REASON, THAT A PARTICULAR GRANT OF MONEY SHOULD BE SOUGHT AFTER BY THE FOUNDATION, RATHER THAN BY THE DEPARTMENT, ASSUMING DEPARTMENTAL ELIGIBILITY TO BE ENGAGED IN THE PROGRAM AS WELL, THAT PERSON HAS PERMITTED HIS OR HER INDEPENDENT JUDGMENT TO BE COLORED BY THE AFFILIATION WITH THE FOUNDATION, A VIOLATION OF 74 O.S. 4241. IF THE PERSON RECEIVES ANY COMPENSATION FROM THE FOUNDATION FROM A PROJECT THAT THE STATE COULD HAVE POSSIBLY OBTAINED, THE MATTER IS MADE ALL THE WORSE.
INDEED, THERE ARE A NUMBER OF OTHER STATUTORY PROVISIONS THAT COULD BE BROUGHT INTO PLAY IN A GIVEN SITUATION. FOR EXAMPLE, IF AN EMPLOYEE OF THE DEPARTMENT IS TO RECEIVE COMPENSATION FOR HIS OR HER CORPORATE ACTIVITIES FOR THE FOUNDATION IN SOME RESEARCH PROJECT, AND THE DEPARTMENT ENTERS INTO A CONTRACTUAL RELATIONSHIP WITH THE FOUNDATION TO ADMINISTER THE PROGRAM JOINTLY, IT COULD BE TECHNICALLY ILLEGAL FOR THE DEPARTMENT TO ENTER INTO THE AGREEMENT IN THE FIRST PLACE, UNDER 74 O.S. 4243 (1987).
PERHAPS OF EVEN GREATER CONCERN IS THAT OF THE DEPARTMENT PERFORMING ITS PUBLIC DUTIES IN A MANNER NOT PERMITTED BY LAW. UNDER ARTICLE X, SECTION 14/ARTICLE X, SECTION 15 TO THE OKLAHOMA CONSTITUTION, THE STATE MAY ENGAGE IN PERFORMING PUBLIC SERVICES THROUGH PRIVATE MEANS ONLY WHERE THE LEGISLATURE HAS SPECIFICALLY AUTHORIZED SUCH ACTIONS, AND ACCOMPANIED THAT AUTHORIZATION WITH DETAILED INSTRUCTIONS AND GUIDELINES RELATED TO IMPLEMENTATION. WAY V. GRAND RIVER LAKE ASSOC. INC., 635 P.2D 1010 (OKLA. 1981). IF MS. ENNIS' REPRESENTATIONS CONCERNING THE USE OF THE FOUNDATION ARE ACCURATE, THE DEPARTMENT WOULD REALLY BE USING THE FOUNDATION TO PERFORM ITS STATUTORY DUTIES, WITH THE FOUNDATION MAINLY A SHELL FOR THE RECEIPT OF FUNDS. ALL REAL WORK AND SUPPORT FOR THESE ACTIVITIES WOULD BE PROVIDED BY THE STATE. STATE PERSONNEL, EQUIPMENT, SERVICES, SUPPLIES AND SECURITY WOULD BE AT THE DISPOSAL OF THE FOUNDATION. WHILE CERTAINLY MOST STATE CONTRACTS WOULD NOT HAVE TO MEET THE WAY REQUIREMENTS FOR LEGITIMACY, IF MS. ENNIS IS TRULY CORRECT IN HER JUDGMENT ON THE MANNER OF OPERATION IN THIS FOUNDATION, THIS RELATIONSHIP WOULD REQUIRE SPECIFIC LEGISLATIVE AUTHORIZATION TO BE VALIDLY ENGAGED IN.
UNTIL SOME CONCRETE ACTION IS TAKEN BY THE FOUNDATION, AND SOME MONIES POTENTIALLY AVAILABLE TO THE STATE ARE INSTEAD SOUGHT AFTER BY THESE STATE EMPLOYEES AND DIVERTED TO THE FOUNDATION, THERE IS LITTLE MORE THAT I CAN ADVISE. I WOULD NOT BE SURPRISED IF A COURT WERE TO RULE THAT INVOLVEMENT IN THE FOUNDATION BY DEPARTMENTAL EMPLOYEES IS NOT A PER SE VIOLATION OF STATE LAW. HOWEVER, I FAIL TO SEE HOW, IN A PRACTICAL MANNER, THE FOUNDATION CAN OPERATE AS INTENDED AND INDICATED IN ITS FORMATION DOCUMENTS WITHOUT THE RESULT BEING A VIOLATION OF STATE LAW BY THE EMPLOYEES INVOLVED.
(MICHAEL SCOTT FERN)